926 So.2d 485 (2006)
Alicia C. NORRIS, Appellant,
v.
David Chadwick NORRIS, Appellee.
No. 2D05-5501.
District Court of Appeal of Florida, Second District.
April 28, 2006.
*486 Allison M. Perry of Law Office of Allison M. Perry, P.A., Tampa, for Appellant.
Christine M. Jalbert, St. Petersburg, for Appellee.
LaROSE, Judge.
Alicia Norris appeals the trial court's order enforcing provisions of a marital settlement agreement (MSA). We affirm in part and reverse in part.
At the time of their marriage dissolution in May 2005, the parties agreed on little. Ultimately, they ceded major decisions concerning their children to others. The MSA provided that the parties, together, would make major decisions affecting their children's health, welfare, and education. If they could not agree on medical matters, the MSA provided that the children's pediatrician would make the final decision. The MSA also provided that a specified parenting coordinator would make a final decision, following specified procedures, on other matters in the case of an impasse. The trial court approved the MSA and retained jurisdiction to enforce its terms.
The parties soon disagreed on matters concerning the children's health care and education. Ms. Norris wanted no inoculations. She also wanted the children to attend, at her expense, a private school with a nontraditional curriculum.[1] Mr. Norris wanted the children inoculated and wanted them to attend public school. After meeting with both parents, the pediatrician, in a written report, concluded that inoculations were appropriate; the benefits *487 of this regimen outweighed the risks. As for the children's educational environment, the parenting coordinator suggested in a short letter that he preferred a public school. Mr. Norris moved to enforce the MSA's provisions. Ms. Norris moved the trial court to select the school environment "in the best interests of the minor child."[2]
After a lengthy hearing, the trial court ordered the children to be inoculated within forty-five days. The trial court also ordered the children to be placed in public school. The trial court stayed its order pending our review.
According to Ms. Norris, the trial court improperly interpreted the MSA and based its rulings on insufficient evidence. We review the wording and meaning of the MSA de novo. Spalding v. Spalding, 907 So.2d 1270, 1273 (Fla. 5th DCA 2005) (citing McIlmoil v. McIlmoil, 784 So.2d 557, 561 (Fla. 1st DCA 2001) (holding final judgment incorporating MSA to be interpreted like any contract; unambiguous language to be given realistic interpretation based on plain, everyday meaning conveyed)). We cannot remake the parties' agreement. The parties entered into the MSA, and a court will honor its terms if the children's best interests are served fully. Id. at 1275; Wendel v. Wendel, 852 So.2d 277, 285 (Fla. 2d DCA 2003).
We are unpersuaded by Ms. Norris's argument that the MSA did not authorize the pediatrician to decide the inoculation issue. By its plain language, the MSA provides that medical decisions, absent agreement by the parents, will be made by the pediatrician according to procedures specified in the MSA. The pediatrician met with both parents and issued a written opinion. He determined that inoculations were medically indicated. Ms. Norris did not seek a second opinion nor did she present any evidence that the MSA procedure and the pediatrician's decision were not in the children's best interests.[3] The record demonstrates that the trial court properly considered the evidence and the children's best interests. Accordingly, we affirm the trial court's order as it relates to the inoculations.
Ms. Norris also argues that there was insufficient evidence to support the trial court's order that the children be educated in public school. Here, we must agree with Ms. Norris. The MSA provided that, absent the parents' agreement, the parenting coordinator would make the final decision on educational matters. Under the MSA, the parenting coordinator was required to review all information provided by the parties. The MSA also required him to make written findings and issue a written report.
The parenting coordinator made no written findings and issued no written report. He merely prepared a two-paragraph letter explaining that he encouraged the parents to resolve the matter and opining that the children might be better monitored in a public school. He visited neither school. The trial court also heard the parents' testimony and that of a witness called by Ms. Norris who favored the private school. The trial court placed significant emphasis on the fact that the parenting coordinator's recommendation would be final under the MSA.
*488 Unfortunately, the trial court's order, as it related to the education issue, is not supported by the record. See generally Roski v. Roski, 730 So.2d 413, 414 (Fla. 2d DCA 1999) (holding evidence did not support supervised visitation); Scaringe v. Herrick, 711 So.2d 204, 205 (Fla. 2d DCA 1998) (emphasizing importance of trial court's fact-finding responsibilities in determining best interests of children). The parenting coordinator did not follow the provisions of the MSA concerning the children's educational future. He offered but a conclusory opinion unsupported by a factual basis. Although we express no view on what is the appropriate educational environment for the children, we do not find competent, substantial evidence in the record supporting a finding that public school attendance serves the children's best interests. Thus, we must reverse that portion of the trial court's order concerning school placement.
Affirmed in part; reversed in part.
FULMER, C.J., and CANADY, J., Concur.
NOTES
[1] The older child attended the nontraditional, private elementary school. The younger child was not yet of elementary school age.
[2] Ms. Norris argues that the trial court should not have ruled on inoculations and schooling for the younger child because Mr. Norris's motion did not encompass that child. We reject this argument. Mr. Norris's motion and requested relief contemplated enforcement of the MSA as to both children.
[3] Ms. Norris's argument that the children should not be inoculated because of her religious scruples is not supported by the record.